Laura Cornelia Isabet v. Nancy Ellen Scott et al.
Arthur F. Heath, Administrator of the Will Annexed of the Estate of Laura C. Isabet, Deceased, and Carroll & Son, Appellees, v. Nancy Ellen Scott, as Surviving Trustee of the Estate of Louis Dixon Isabet, Deceased, Appellant. Robert Martin, a Minor, by his Guardian Ad Litem, and Mary Martin, Appellants.

Gen. No. 8,990.

Opinion filed June 3, 1936.

PAUL McWILLIAMS, for appellants.

STUTTLE & GODFREY and DRYER, BROWN & POOS, of Hillsboro, for appellees.

MR. JUSTICE FULTON delivered the opinion of the court.

On January 3, 1925, Laura Cornelia Isabet filed a bill in equity in the circuit court of Montgomery county for a construction of the last will and testament of her deceased brother, Louis Dixon Isabet, and for the appointment of trustees. She named as defendants to this bill Nancy Ellen Scott, Edgar Martin, Mary J. McReynolds, Robert Martin, Mary Martin, trustees of Asbury Cemetery Association, Raymond, Illinois, and Union Sunday School at Honey Bend, Illinois. In her bill, she alleged that her brother died testate on January 20, 1924; that his will was admitted to probate in the county court of Montgomery county on March 3, 1924; that letters testamentary were issued to Nancy Ellen Scott and Edgar Martin, as executors; that her brother was a bachelor and left no parents, widow or descendants and that she and her sister Mary J. McReynolds were his sisters and his sole next of kin. Attached to the bill was a copy of the last will and testament of the said Louis Dixon Isabet, the pertinent provisions of which so far as this controversy is concerned were as follows:

"Second. I will that my executors sell my property and invest the proceeds in U. S. Bonds, and use the in-

terest from same in the maintenance and support of my sister, Laura Cornelia Isabet, hereby directing that if such income shall be insufficient for such purpose, said executors shall use the principal of my estate therefor, it being my will that my said sister shall have a comfortable living and support for the remainder of her life.

"Third. I will that at the death of my said sister, my executors shall pay the following bequests: To the Union Sunday School at Honey Bend, Illinois, $500.00. To Robert Martin and Mary Martin, children of Edgar Martin, $500.00 each, and if one be dead, then $1,000.00 to the survivor. To the Trustees of Asbury Cemetery, Raymond, Illinois, $1,000.00 (to be used, etc). At the death of my sister, and also after the payment of the above bequests, and also, after the payment of the funeral expenses and debts of my said sister, I will that my executors pay the balance of my estate which may remain in their hands to such person as my said sister may by will appoint, and if no will, then to the heirs of law of my said sister."

It was further alleged in the bill of complaint that the executors named in said will had not complied with the terms thereof and had refused to furnish the complainant with the proper and necessary means of support from the estate of her brother and that she had been compelled to rely upon relatives for help and support since his death. In the prayer of the bill she asks that the will be construed to give her an absolute right to the estate, or in the event that the court should not so hold, that a trustee be appointed to hold said estate in trust for her benefit so that she might be insured a comfortable living and support during the remainder of her life and at her death the trustee named be directed to pay from the balance of any of said trust estate remaining in his hands, the funeral expenses of Laura Cornelia Isabet and the specific legacies named

in the will and the balance to her sister Mary J. Mc-Reynolds. On January 26, 1925, the executors named in the will filed an answer to the bill of complaint demurring to the part which asks for a construction of the will giving to Laura Cornelia Isabet an absolute interest and denying the allegation that she was not receiving adequate support. At the same time the executors filed a cross-bill asking for the appointment of themselves as trustees and that the assets of the estate be preserved in their hands as such trustees. All defendants to the original bill were served with summons and a guardian *ad litem* was appointed for minor defendants. On May 16, 1925, the court entered a decree on the cross-bill sustaining the demurrer of the executors on the grounds that the complainant was not entitled to an absolute estate, appointing the said executors as trustees, requiring them to file a bond as such trustees, providing that they shall keep the funds invested and pay to Laura Cornelia Isabet such portion of the income and if necessary of the principal as would provide her a comfortable living and support during the remainder of her life, and providing further for the payment of the funeral expenses and debts of Laura Cornelia Isabet first then the specific bequests provided for in the will and the balance to Mary J. McReynolds or to her heirs at law.

On June 1, 1925, the trustees filed a petition in the cause asking for directions as to the amount Laura Cornelia Isabet should be paid for her comfortable support and maintenance. After the taking of proofs the court on the 1st day of July, 1925, entered a decree finding that the amount necessary for the care, maintenance and support of Laura Cornelia Isabet was the sum of $75 per month. The court further ordered that the trustees pay out of the funds in their hands to Laura Cornelia Isabet the sum of $200 for back instalments due to her for support. This decree was O.K.'d

by counsel for all parties. Payments were made in accordance with this decree of the court until January 2, 1934, when the court entered a subsequent order reducing the monthly payments to $37.50. Payments under this order were continued until the death of Laura Cornelia Isabet on February 23, 1934. On April 16, 1935, Arthur Heath, as administrator with the will annexed of the estate of Laura Cornelia Isabet, filed an amended intervening petition in the cause in which Carroll & Son, with leave obtained, joined and in which it was alleged that Carroll & Son were the undertakers who buried the body of Laura Cornelia Isabet and praying that her funeral expenses, amounting to $572, be paid from the trust estate in the hands of said trustees. On August 9, 1935, the trustees filed a report showing a balance on hand in the trust estate of $113.93 but further showing that on March 22, 1934, a distribution amounting to $500 was made to the legatees under the Louis Dixon Isabet will. Appellees filed objections to the items in this report which showed payments to such legatees on the grounds that such disbursements were contrary to the decree of the court rendered May 16, 1925, and that such decree provided that the funeral expenses of Laura Cornelia Isabet be paid first and before any payment should be made on the legacies. The objections further asked that the trustees be required to restate their report and pay the funeral expenses of Laura Cornelia Isabet.

On the same date the trustees answered the said objections setting forth that at the time Miss Isabet became deceased she had on hand the sum of $1,700 which arose out of her savings from the monies paid her by the trustees and that it was therefore unjust to require the funeral expenses to be paid out of trust funds.

A new guardian *ad litem* was appointed for Robert Martin, a minor in this proceeding, and he answered the objections of Heath, administrator, urging similar

grounds to those filed by the trustees, and in addition thereto asked the court to review its former decree of May 16, 1925, and to refuse the relief asked for by the objectors. The trustees filed an answer to the amended petition of Heath, administrator, and Carroll & Son and in paragraphs 6, 7, 8, 9 & 10, it was set forth that because the estate of Laura Cornelia Isabet inventoried $1,700 in cash and because her will provided for the full and complete payment of all of her just debts and funeral expenses, that the payment of her debts could not be properly determined on May 16, 1925; that the estate owned by Miss Isabet at the time of her death consisted of savings from the payments made her by the trustees, and represented a surplus in excess of the amount which she required "for a comfortable living and support" and therefore belonged to the trust estate held by the trustees; that it would be contrary to the express intent of the testator, Louis Dixon Isabet, for the court to now order the trustees to pay the funeral expenses, and prayed that the court reconsider said decree and refuse to enforce the same; that an accounting be had and if Heath, administrator, had any balance on hand after paying the debts and funeral expenses that the same be ordered paid to the trustees. Appellees moved to strike said paragraphs 6, 7, 8, 9 & 10 and the prayer of the trustees on the grounds that the decree entered May 16, 1925, is *res adjudicata;* also because no claim was filed by the trustees within one year from the date letters were issued in said estate and because the matters set forth in the answer were not a sufficient defense.

All the matters in controversy were tried together on the pleadings, the report of the trustees, objections thereto, answer to said objections, and motion to strike. The court entered a decree on January 4, 1936, ordering that the objections to the items shown in the report of the trustees showing disbursements of $500 to apply

on legacies was sustained; that the motion to strike paragraphs 6, 7, 8, 9 & 10 of the answer of the trustees was granted; that the trustees restate their report and show on hand a balance of $613.93; that the trustees pay Heath, administrator of the estate of Laura Cornelia Isabet, deceased, a total of $572 to cover funeral expenses; that the counterclaim of the trustees asking for an accounting from Heath, administrator, be disallowed; that the trustees pay the costs and that the prayer of the guardian *ad litem* for a review of the decree of May 16, 1925, be denied.

The pleadings leading up to the decree of January 4, 1936, are informal but are not questioned by any of the parties and raise two main issues. First, was the decree of the court dated May 16, 1925, *res adjudicata* as to the construction of the will of Louis Dixon Isabet, deceased, and upon which the claim of the intervening petitioners, appellees here, was based? It is urged by the appellants that the circumstances which existed on May 16, 1925, and also on July 1, 1925, when Laura Cornelia Isabet appeared before the court, without money or property for her support did not exist at the time of her death; that when she died she had $1,700 in the bank, and left a will providing that her funeral expenses be paid by her executor; that therefore it would be inequitable and unjust for the court to enforce its earlier decree, and that the same should be reviewed in order to do equity; that if said original decree is enforced strictly, even though it was right and just at the time, it would result in completely thwarting the will of the testator. We cannot find any warrant in law to support appellants' theory. The record shows conclusively that Laura Cornelia Isabet filed her bill to construe the will of her deceased brother, Louis Dixon Isabet. All parties in interest were made defendants and served with process of summons. Mary Martin and Robert Martin were then

minor defendants and a guardian *ad litem* was appointed to protect their interests, and he filed an answer to the original bill. The executors demurred to and answered the original bill and then filed a cross-bill. In their cross-bill they asked to be named trustees and for other relief. Laura Cornelia Isabet and all other defendants to the original bill were made parties to the cross-bill. The same guardian *ad litem* represented the minor defendants to the cross-bill and answered for them. The decree was entered in behalf of the cross complainants and prepared by their attorney or solicitor. It recited all the jurisdictional facts and construed the will of the deceased brother. Laura Cornelia Isabet was the only party complainant to the original bill so that all the defendants were adversary parties. Under these circumstances the issues determined by such decree were *res adjudicata.*

"When some specific fact or claim has been adjudicated and determined in a former suit, and the same fact or question is again put in issue in a subsequent suit, between the same parties, the determination in the former suit, if properly presented and relied upon, will be held conclusive upon the parties in the latter suit as to that question without regard to whether the cause of action in each case is the same." *Dempster v. Lansingh,* 244 Ill. 402.

Our conclusion is that the appellants are bound by the terms of the decree construing the will in question in which it was provided that at the death of Laura Cornelia Isabet, the trustees shall first pay the funeral expenses and debts of said Laura Cornelia Isabet before the payment of the specific legacies. Even though by reason of circumstances the provisions of said decree may now seem inequitable, a court of equity is powerless to review or change its terms.

By the failure to appeal or prosecute a writ of error therefrom, the decree becomes final and no one can

thereafter change the same. *Wakefield v. Wakefield,* 256 Ill. 296. Minor defendants who are personally served with process of summons, properly represented by guardian *ad litem,* are bound by the terms of a final decree. *Hanberg v. Morgan,* 263 Ill. 616.

We believe the ruling of the trial court in granting the appellee's motion to strike paragraphs 6, 7, 8, 9 and 10 of the answer of appellants was correct.

The second question raised by appellants was whether Heath, as administrator of the Laura Cornelia Isabet estate, should be required to pay back to the appellant trustees money paid to her for her comfortable support and maintenance under a court order entered on the petition of the trustees asking for aid and directions as set forth in the counterclaim of appellant trustees. On June 1, 1925, the said trustees filed a petition in the cause asking for the aid and direction of the court as to the amount that should properly be paid to Laura Cornelia Isabet for her comfortable support and maintenance. On July 1, 1925, the court entered an order fixing the monthly payment to her at the sum of $75 per month and also paying her $200 for back instalments due to her. Payment was made in compliance with this order until January 2, 1934, when the payment was reduced to $37.50 per month. It is the contention of appellants that such monthly payments were made for a definite purpose; that the money did not cease to become trust funds when she received it and because of the fact that she was overpaid and had accumulated the sum of $1,700 at her death, the said amount should now be paid back to the trustees and become a part of the trust assets of the Louis Dixon Isabet estate and be devoted not only to the payment of the funeral expenses of Miss Isabet but to the payment of the specific legacies as well. Laura Cornelia Isabet died on February 23, 1934, and her administrator was appointed on May 7, 1934. The intervening

petition of appellees was filed herein on April 16, 1935, and the answer and counterclaim of appellant trustees on November 29, 1935. Thus it is seen that no claim was filed against the estate of Laura Cornelia Isabet in this behalf until more than one year had expired from the date letters of administration were issued and the claim is barred. *People v. Superior Court,* 359 Ill. 612.

Even though the counterclaim were not barred by the limitation contained in the Administration Act, Ill. State Bar Stats. 1935, ch. 3, we doubt their right to reach the money inventoried in the Laura Cornelia Isabet estate. After the appointment of the trustees by the decree of May 16, 1925, they immediately sought the aid of the circuit court in making monthly payments to Laura Cornelia Isabet. At their own solicitation a definite amount was fixed by an order of court approved by counsel for both sides. They were fully protected by the decree sought and bound by the same. There are no such facts set forth in their answer as entitles them to recover back the assets of the Laura Cornelia Isabet estate as trust funds. The decree of the trial court was, in our judgment, entirely correct and is affirmed.

*Affirmed.*